UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY RHODES,        )
                       )
        Plaintiff,     )
                       )
    v.                 )    Civil Action No. 16-1111 (TNM)
                       )
                       )
FEDERAL BUREAU         )
OF INVESTIGATION,      )
                       )
        Defendant.     )

## MEMORANDUM OPINION

Plaintiff Anthony Rhodes, appearing *pro se*, challenges the Federal Bureau of Investigation's response to his Freedom of Information Act ("FOIA") request. Plaintiff takes issue specifically with the FBI's decision to neither confirm nor deny the existence of his name on any watch lists. Defendant has moved for summary judgment, contending that it has fulfilled its FOIA obligations. Plaintiff has offered nothing to the contrary. Accordingly, Defendant's motion will be granted for the reasons explained more fully below, and Plaintiff's pending motions to compel, to expedite the proceedings, and to issue an order of protection will be denied as moot.

## I. BACKGROUND

### A. Factual History

On November 23, 2015, Plaintiff requested from the FBI "copies of all records about me." Decl. of David M. Hardy, Ex. A, ECF No. 10-3. He included his personal information and a signed Certification of Identity Form. By letter dated November 30, 2015, the FBI informed Plaintiff that a search of its Central Records System located no responsive records and invited

1

him to provide "additional [detailed] information . . . that you believe was of investigative interest to the Bureau" that might enable an additional search. Hardy Decl., Ex. B. The FBI added: "In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E)/Privacy Act exemption (j)(2) . . ., this response neither confirms nor denies the existence of your subject's name on any watch lists." *Id.* Such a response is commonly referred to as a *Glomar* response.[1]

Plaintiff appealed the FBI's determination to the Office of Information Policy ("OIP") to the extent "that some or all of my request cannot be provided because it is exempt under the [FOIA]." Hardy Decl., Ex. C. Plaintiff requested reconsideration "because: Suspicion of illegal activities by law enforcement personnel." *Id.* OIP affirmed the FBI's action in a letter dated January 6, 2016. Hardy Decl., Ex. E.

**B. Procedural History**

In June 2016, Plaintiff lodged with the Clerk of Court two seemingly separate actions, which were filed as one complaint, ECF No. 1. The first action, captioned "Complaint 42 U.S.C. § 1983," lists ten purported causes based on the FBI's "illegal acts against" Plaintiff "during the years of 2004 (to my knowledge) to this current date." Compl. at 2. But it seeks as relief "to compel delivery of the records which have been repeatedly denied me by the [FBI], and ultimately, to be compensated in the amount of $250,000,000.00 in punitive damages for their heinous and illegal acts." *Id.* at 3. The second action, captioned "Complaint for Injunctive Relief," is clearly brought under the FOIA. *See id.* at 5-12. In accordance with the screening requirements of the Prison Litigation Reform Act codified at 28 U.S.C. § 1915A, the complaint

---

[1] A *Glomar* response has its origins in "a case concerning a FOIA request for records relating to an underwater sea craft called the 'Glomar Explorer.' " *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 n.2 (D.C. Cir. 1995) (citing *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976)).

was construed as brought under the FOIA and then assigned to a district judge for further proceedings. *See* June 14, 2016 Order, ECF No. 4.

Upon reviewing Defendant's brief in support of summary judgment, this Court discovered that Defendant had not addressed the actual claim set out in the complaint and ordered supplementation of the record by May 14, 2018. *See* Apr. 16, 2018 Minute Order. Now before the Court are Defendant's initial motion for summary judgment, ECF No. 10, which was held in abeyance, and its supplemental motion for summary judgment, ECF No. 24. Plaintiff has neither responded to Defendant's supplemental motion by the court-imposed deadline of May 28, 2018, *see* Order, ECF No. 25, nor requested additional time to respond. Therefore, as Plaintiff was warned, the Court will proceed to the merits without his input.[2]

## II. LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The Court must "state on the record" why Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365-66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A) (records sought must be "reasonably describe[d]"). Thus, a FOIA defendant is entitled to

---

[2] Despite multiple warnings about the consequences of failing to oppose a dispositive motion, Plaintiff did not oppose Defendant's initial motion either. *See* Dec. 15, 2016 Order, ECF No. 15 (denying Plaintiff's motions to compel and for expedited discovery and enlarging the opposition deadline to January 30, 2017); Sept. 27, 2016 Order, ECF No. 11 (advising Plaintiff that his failure to respond to Defendant's summary judgment motion by November 14, 2016, may result in a grant of summary judgment to the Defendant).

summary judgment if it demonstrates that there is no genuine dispute as to whether "each document that falls within the class requested, either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

To show that unproduced documents are exempt from FOIA, an agency may file "affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). Although courts review the applicability of FOIA exemptions de novo, they give "substantial weight to detailed agency explanations" of national security concerns related to the release of information. *Id.* "[I]f the [very] fact of the existence or nonexistence of agency records falls within a FOIA exemption," a defendant may issue a *Glomar* response, declining to confirm or deny the existence of requested records. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). An agency issuing a *Glomar* response must explain in as much detail as possible why it cannot confirm or deny the existence of certain records or categories of records, which it may attempt to do by affidavit. *James Madison Project v. Dep't of Justice*, 208 F. Supp. 3d 265, 283 (D.D.C. 2016) (citing *Phillippi*, 546 F.2d at 1013). The D.C. Circuit instructs:

> If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone.

*ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citation omitted).

"In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Wolf*, 473 F.3d at 374. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *ACLU*, 628 F.3d at 619 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotation marks omitted)). To successfully challenge an agency's showing that it complied with the FOIA, "the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

## III. ANALYSIS

As indicated above, it is standard practice for the FBI to neither confirm nor deny whether a FOIA requester's name appears on a watch list. The FBI invoked FOIA Exemption 7(E) in response to Plaintiff's request. Exemption 7(E) shields from disclosure records or information compiled for law enforcement purposes that would reveal "techniques and procedures for law enforcement investigations or prosecutions" or "guidelines for law enforcement investigations or prosecution if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Defendant's declarant describes the watch-list information as follows. The "consolidated Terrorist Watchlist" supports "the ability of front-line screening agencies to positively identify known or suspected terrorists trying to obtain visas, enter the country, board aircraft, or engage in other activity[.]" Supp. Hardy Decl. ¶ 5, ECF No. 24-4. It is "composed of many sub-lists pertaining to various categories of criminal matter under investigation, such as the so-called 'no-

fly list.'" *Id.* The FBI's "records concerning terrorist watch lists were compiled and created in furtherance of [its] law enforcement, national security, and intelligence missions." *Id.* ¶ 10. Any potential "watchlist records responsive to Plaintiff . . . would relate to investigative matters that are part of the FBI's primary law enforcement mission." *Id.* ¶ 8. The threshold law enforcement requirement of Exemption 7(E) is without question satisfied.

As for harm, the declarant states that "[g]iven the sensitive information contained on the watchlist, the mere acknowledgment of the existence or non-existence" of a name on any watch list "could enable the targets of the watch list to avoid detection or develop countermeasures to circumvent the [FBI's] ability . . . to effectively use this important law enforcement technique[.]" Supp. Hardy Decl. ¶ 13. And while "the existence of no-fly lists" has been public since October 2002, "the specific criteria and standards for placing individuals on watch lists" are not "publicly known." *Id.* Nor can they be "without compromising intelligence and security or inviting subversion of [such] lists by individuals who will seek ways to adjust their behavior to avoid being identified as a threat to aviation. Thus, the success of this antiterrorism tool depends in part on the confidentiality of the protocols for inclusion on a no-fly list." *Id.* ¶ 14. The declarant offers specific examples of how confirmation of an individual's watch-list status "reasonably could be expected to compromise investigative operations as well as endanger investigative or intelligence sources and methods." *Id.* ¶ 15.

Another judge of this court has approved the FBI's *Glomar* response regarding watch-list information based on the same rationale by the same declarant under nearly the same circumstances. In *Kalu v. Internal Revenue Serv.*, No. 14-cv-998, 2015 WL 4077756 (D.D.C. July 1, 2015), Judge Boasberg denied the FBI's motion "insofar as it relates to watch-list records" because, as here, the FBI had not addressed its *Glomar* response in its brief. *Id. at* \*1.

Once it had, Judge Boasberg concluded that the FBI "is entitled to keep mum on the issue" because "the agency's supplemental declaration [of David Hardy] provides reasonable and sufficiently specific reasons to justify its *Glomar* response in this case—namely, that anything other than a 'neither confirm nor deny' response would tend to disclose at the very least 'guidelines for law enforcement investigations or prosecutions' and that such disclosure 'could reasonably be expected to risk circumvention of the law.'" *Kalu v. Internal Revenue Serv.*, 159 F. Supp. 3d 16, 19, 23 (D.D.C. 2016) (quoting § 552(b)(7)(E) (other citation omitted)). Other courts have ruled similarly. *See id.* at 23 and *Ryan v. Fed. Bureau of Investigation*, 113 F. Supp. 3d 356, 363 n.5 (D.D.C. 2015) (citing cases). Nothing supports a departure in this case.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has fully satisfied its obligations under FOIA and, in the absence of contrary evidence, is entitled to judgment as a matter of law. A separate order will issue.

Dated: June 14, 2018

TREVOR N. MCFADDEN
United States District Judge

---

[3] Plaintiff has expressed no dissatisfaction with the FBI's search and no-records response. The Court nevertheless finds from its review of the record that the FBI conducted an adequate search for records otherwise responsive to Plaintiff's request. *See* First Hardy Decl. ¶¶ 18-22 (detailing search terms utilized and search methods employed and averring that the search covered "the only system of records where information about the plaintiff would likely be maintained").

7